MAR 11 2020 PM 1:18
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-19-2

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:20 cr 51 (KAD)(SALM) |
| v. | |
| FAROUQ FASASI,<br>RODNEY THOMAS, JR.,<br>MONTRELL DOBBS, JR.,<br>STANLEY PIERRE, and<br>RALPH PIERRE | VIOLATIONS:<br>18 U.S.C. § 1349<br>(Conspiracy to Commit Mail and Fraud)<br><br>18 U.S.C. § 1341<br>(Mail Fraud)<br><br>18 U.S.C. § 1956(h)<br>(Conspiracy to Commit Money<br>Laundering)<br><br>18 U.S.C. § 1957<br>(Money Laundering) |

INDICTMENT

The Grand Jury charges:

INTRODUCTION

At all times relevant to this Indictment:

Background On The Defendants

1.      FAROUQ FASASI ("FASASI") was a citizen of Nigeria and a legal permanent resident of the United States. FASASI used addresses on Sherman Avenue in New Haven, Connecticut (the "Sherman Avenue address") and Hubinger Street, also in New Haven.

2.      RODNEY THOMAS, JR. ("THOMAS") was a citizen of the United States. THOMAS used the Sherman Avenue address.

3.      MONTRELL DOBBS, JR. ("DOBBS") was a citizen of the United States. DOBBS used the Sherman Avenue address as well as addresses on North State Street in Ansonia, Connecticut and W. Easton Street in Hamden, Connecticut.

4.      STANLEY PIERRE ("S. PIERRE") was a citizen of the United States. S. PIERRE used an address on Anson Street in Bridgeport, Connecticut. S. PIERRE did business as "Oniontek"; Oniontek was not registered in Connecticut.

5.      RALPH PIERRE ("R. PIERRE") was a citizen of the United States. R. PIERRE used the Sherman Avenue address. R. PIERRE was the registered agent for Global Protection Foundation Inc., a nonprofit corporation registered in Connecticut in or about July 2018.

6.      Jeannerva Louissaint ("Louissaint"), who is charged separately, was a citizen of the United States. Louissaint used the Sherman Avenue address.

7.      FASASI, THOMAS, DOBBS, R. PIERRE and Louissaint resided for at least parts of the relevant period at the Sherman Avenue address, a multi-family home.

COUNT ONE
(Conspiracy to Commit Mail and Wire Fraud)
(FASASI, THOMAS)

8.      Paragraphs 1 through 7 are incorporated by reference.

The Conspiracy

9.      From in or around August 2015 and continuing through the date of this Indictment, in the District of Connecticut and elsewhere, FASASI and THOMAS knowingly and with the specific intent to defraud, did combine, conspire, confederate, and agree with each other and with Louissaint and with others known and unknown to the Grand Jury to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

10.     The object and purpose of the conspiracy was for FASASI, THOMAS, Louissaint, and their coconspirators to enrich themselves by knowingly devising and intending to devise a scheme to defraud others and to obtain money from others by means of materially false and fraudulent pretenses, representations, and promises, and to use both the mail and interstate wires in execution of that scheme.

<u>Manner and Means of the Conspiracy</u>

11.     It was part of the scheme and conspiracy that conspirators contacted individuals, primarily elderly, in the United States (the "victims") via the Internet and telephone and, through a variety of means, fraudulently induced the victims to (i) send cash, money orders, and checks through the United States mail and private and commercial interstate carriers to specified addresses and recipients; (ii) wire money from out-of-state bank accounts to bank accounts controlled by FASASI, THOMAS, Louissaint, and their associates, including Dobbs, S. Pierre, and R. Pierre, who are charged in the money laundering counts below, in the District of Connecticut; and (iii) deposit money directly into bank accounts controlled by FASASI, THOMAS, Louissaint, and their associates, including Dobbs, S. Pierre, and R. Pierre.

12.     It was part of the scheme and conspiracy that the conspirators used various scams, including lottery scams and romance scams, to fraudulently induce victims to provide money, gifts or personal details. Those scams are generally defined as follows:

a.      In a lottery scam, scammers notify victims by telephone, through online communications, and by mail, that they have won the lottery. The victims are then told that in order to collect the prize they must pay fees for things like taxes, shipping, and processing. Often once a victim sends a small amount of money, a

scammer will ask for larger sums of money with a promise of more winnings. The victims never receive winnings.

b.      In a romance scam, scammers take advantage of people looking for companionship by pretending to be prospective companions. Scammers typically create fake online profiles on dating websites that include false personal details such as the death of a spouse or military service, to lure victims to trust them. Scammers will build relationships with victims. Once they have gained the trust of victims, scammers will ask victims for money, falsely claiming to need money for medical or business emergencies, for travel to see the victim, or other purposes.

13.     It was part of the scheme and conspiracy that FASASI, THOMAS, Louissaint, and their associates, including Dobbs, S. Pierre, and R. Pierre, who are charged in the money laundering counts below, would retain a portion of the fraudulently obtained money and pass the rest to others by using various financial instruments, sending cash in the mail and by private and commercial interstate carrier, and depositing cash or checks into bank accounts that were not their own.

14.     Through this scheme and conspiracy, FASASI, THOMAS, Louissaint, and their coconspirators defrauded dozens of victims out of millions of dollars.

15.     For example, the conspirators obtained money from the following victims in the following manner:

Victim #1

16.     "Victim #1," whose identity is known to the Grand Jury, was an 84-year-old female resident of Missouri.

17.     Victim #1 was a victim of a romance scam. In or around August 2016, Victim #1 met a conspirator claiming to be "Howard Boyer" through an online dating

4

website. Through email exchanges, Boyer fraudulently convinced Victim #1 that Boyer needed money for various reasons. Victim #1 complied with Boyer's requests. Eventually Victim #1 learned that Boyer was defrauding her.

18.     During the course of the scheme, in response to Boyer's requests, Victim #1 mailed three cashier's checks, each for $10,000, with remitter Victim #1 and payable to FASASI. Each check was deposited on the dates listed below into FASASI's TD Bank account ending in 5682:

       a.     On or about February 7, 2017; and

       b.     On or about March 7, 2017; and

       c.     On or about March 15, 2017.

19.     On or about March 17, 2017, FASASI withdrew $15,083.75 from his TD Bank account ending in 5682.

<u>Victim #2</u>

20.     "Victim #2," whose identity is known to the Grand Jury, was a 68-year-old male resident of Illinois.

21.     Victim #2 was a victim of a romance scam. In or around April 2017, Victim #2 met a conspirator claiming to be "Isabel Galvez" through an online dating website. Galvez communicated with Victim #2 via text message and email. Galvez stated that she would like to meet Victim #2 in person, but that she was going on a business trip to Malaysia. Soon after, Victim #2 received an email from Galvez claiming that Galvez needed financial assistance and requested a wire transfer of $20,000. In response, Victim #2 agreed to wire $5,000 to an individual whose identity is known to the Grand Jury and is referred to herein as "Associate #1," in Hamden, Connecticut. Galvez then asked Victim #2 to become her

business partner. Galvez instructed Victim #2 to send cashier's checks to FASASI at his Hubinger Street address. Victim #2 complied with these requests.

22.    On or about May 8, 2017, Victim #2 sent a package using the United States Postal Service to FASASI at his Hubinger Street address. The package contained a $20,000 cashier's check, paid to the order of FASASI with remitter Victim #2.  On or about May 9, 2017, that cashier's check was deposited into FASASI's TD Bank account ending in 5682.

23.    On or about May 19, 2017, FASASI withdrew $17,000 from his TD Bank account ending in 5682.

24.    On or about September 6, 2017, Victim #2 sent a package using the United States Postal Service to FASASI at his Hubinger Street address. That package contained a $7,000 cashier's check, paid to the order of FASASI with remitter Victim #2.  On or about September 8, 2017, that cashier's check was deposited into FASASI's TD Bank account ending in 5682.

25.    On or about September 26, 2017, Victim #2 sent a package using the United States Postal Service to FASASI at his Hubinger address. That package contained a $28,000 cashier's check, with remitter Victim #2.  On or about September 27, 2017, that cashier's check was deposited into FASASI's TD Bank account ending in 5682.

26.    On or about October 2, 2017, FASASI withdrew $15,000 in cash from his TD Bank account ending in 5682.

27.    At the direction of Galvez, on or about April 3, 2018, Victim #2 sent a package using the United States Postal Service to an associate of FASASI whose identity is known to the Grand Jury and is referred to herein as "Associate #2," at Dobbs's W. Easton address. That package contained a $3,500 cashier's check with remitter Victim #2.  On or

about April 5, 2018, Associate #2 deposited that check into Associate #2's Bank of America account ending in 5995.

28.    On or about April 11, 2018, Victim #2 sent a package using the United States Postal Service to Associate #2 at Dobbs's W. Easton address.  That package contained a $1,000 cashier's check with remitter Victim #2.  On or about April 13, 2018, Associate #2 deposited that check into Associate #2's Bank of America account ending in 5995.

29.    Eventually Victim #2 changed his phone number so that Galvez could not contact him.

<u>Victim #3</u>

30.    "Victim #3," whose identity is known to the Grand Jury, was an 85-year-old resident of Texas.

31.    Victim #3 was a victim of a Facebook-based lottery scam. In or around August 2017, Victim #3 was contacted by telephone by a conspirator fraudulently claiming (by name) to be Victim #3's friend. This conspirator told Victim #3 that Victim #3 won money through an organization on Facebook, but in order to receive the winnings, Victim #3 would need to send money to people in Connecticut and that Victim #3 would be contacted by others in the organization. Victim #3 eventually learned that the caller was not actually her friend, but was only impersonating her friend. Prior to learning this, at the direction of conspirators, Victim #3 sent money to various people.

32.    On or about August 8, 2017 and on or about August 10, 2017, using the United States Postal Service, Victim #3 sent money to "Larry Santiago" at FASASI's Hubinger Street address.

33.    On or about September 11, 2017, using the United States Postal Service, Victim #3 sent a package addressed to Dobbs at FASASI's Hubinger Street address.

7

34.     On or about September 12, 2017, a $13,000 personal check from Victim #3 was deposited into Dobbs's TD Bank account ending in 7467.

35.     Over the next few weeks, Dobbs made several cash withdrawals from his TD Bank account ending in 7467:

       a.   On or about September 21, 2017, Dobbs withdrew $10,000;

       b.   On or about September 22, 2017, Dobbs withdrew $2,886; and

       c.   On or about September 26, 2017, Dobbs withdrew $2,000.

36.     On or about September 22, 2017, using the United States Postal Service, Victim #3 sent a package addressed to Dobbs at FASASI'S Hubinger Street address.

37.     On or about September 25, 2017, a $15,000 check from Victim #3 was deposited into Dobbs's TD Bank Account ending in 7467. On or about September 27, 2017, TD Bank deducted $15,000 from Dobbs's TD Bank account ending in 7467, refusing to honor the check; $15,000 was returned to Victim #3.

<u>Victim #4</u>

38.     "Victim #4," whose identity is known to the Grand Jury, was a 78-year-old resident of Georgia.

39.     Victim #4 was a victim of a Facebook-based lottery scam. In or around October 2018, Victim #4 received messages from two friends' accounts indicating that they had won a Facebook lottery and that Victim #4 was also a winner. Victim #4 later learned that her friends' accounts were hacked and they did not send her those messages.

40.     Before learning that the Facebook lottery was a scam, Victim #4 accepted a friend request from someone purporting to be "David Dickinson." Dickinson told Victim #4 that Victim #4 won $150,000 but would have to pay an upfront delivery and processing fee

to get her winnings. On two occasions, Dickinson instructed Victim #4 to send cash to THOMAS at the Sherman Avenue address, and Victim #4 complied:

        a.      On or about October 6, 2018, Victim #4 mailed $3,250 in cash to THOMAS at the Sherman Avenue address using the United States Postal Service. Victim #4, as instructed by Dickinson, sent the cash in a book and then put the book in a brown envelope. Dickinson told Victim #4 that THOMAS was the agent in charge of payment confirmation.

        b.      On or about October 10, 2018, Victim #4 mailed $15,000 in cash to THOMAS at the Sherman address using the United States Postal Service. Dickinson instructed Victim #4 to send the cash in a book.

<u>Victim #5</u>

41.    "Victim #5," whose identity is known to the Grand Jury, was a 65-year-old resident of North Carolina.

42.    Victim #5 was a victim of a Facebook lottery scam. In or around May 2018, Victim #5 received a message from her relative's Facebook account claiming that her relative had recently won money and that Victim #5's name was on the list of eligible winners. Victim #5 was advised to reach out to "Christy Winston" through Facebook messenger. Victim #5 contacted Winston and over several months, at the direction of Winston, sent more than $150,000 to various people throughout the United States including:

        a.      On or around May 30, 2018, Victim #5 mailed a $5,850 cashier's check, paid to the order of Louissaint; and

        b.      On or around June 6, 2018, Victim #5 mailed a $15,000 cashier's check, paid to the order of Louissaint, to Louissaint at an address on Eastern Street in New Haven, Connecticut.

43.     On or around November 6, 2018, Victim #5 sent a $9,000 cashier's check, paid to the order of S. Pierre, to S. Pierre at the Sherman Avenue address. On or about November 7, 2018, the check was deposited in S. Pierre's Chase Bank account ending in 7957.

44.     On or about November 8, 2018, Victim #5 sent a $10,940 cashier's check, paid to the order of S. Pierre, to S. Pierre at the Sherman Avenue address. On or about November 9, 2018, the check was deposited in S. Pierre's Chase Bank account ending in 7957.

45.     On or about December 3, 2018, S. Pierre withdrew $11,500 in cash from his Chase Bank account ending in 7957.

<u>Victim #6</u>

46.     "Victim #6," whose identity is known to the Grand Jury, was a 63-year-old resident of Nevada.

47.     In or around early 2017, Victim #6 became a victim of a romance scam. Victim #6 believed she was in a relationship with someone purporting to be "David Brown," whom she met on a dating website for seniors. Through various fraudulent statements and threatening communications, Brown and his associates induced Victim #6 to send to third parties more than $250,000.

48.     On or about July 2, 2018, a $4,200 cashier's check, with remitter Victim #6 and paid to the order of Associate #2, was deposited into Associate #2's Chase Bank account ending in 6733.

49.     On or about December 10, 2018, a $12,000 cashier's check, with remitter Victim #6 and paid to the order of S. Pierre, was deposited into S. Pierre's Chase Bank account ending in 7957.

50.     On or about January 30, 2019, Victim #6 made two separate wire transactions, each for $10,000, from Victim #6's bank account to S. Pierre's TD Bank account ending in 9663.

Victim #7

51.     "Victim #7," whose identity is known to the Grand Jury, was a 68-year-old resident of Colorado.

52.     Victim #7 was a victim of a Facebook lottery scam. In or around September 2018, Victim #7 received messages from her friend's account indicating that her friend had won a Facebook lottery and that Victim #7 was also a winner. Victim #7 later learned that it was not her friend who sent her messages regarding the supposed Facebook lottery.

53.     Prior to learning it was a scam, Victim #7 was made to believe that she had to pay money for fees and a tax to the IRS in order to receive her winnings. Victim #7 became Facebook friends with someone purporting to be "Carl Willman," who Victim #7 believed was a claim agent and would guide her through the process of receiving her winnings.

54.     On or about September 24, 2018, Willman told Victim #7 to put cash in a book and to put the book in an envelope and send the package to THOMAS at the Sherman Avenue address. On or about September 24, 2018, Victim #7 mailed a package using the United States Postal Service to THOMAS at the Sherman Avenue address.

55.     On or about September 25, 2018, Victim #7 sent two packages to R. Pierre at the Hubinger Street address. On September 26, 2018, a $10,000 cashier's check from Victim #7 was deposited into Global Protection Foundation's TD Bank account ending in 6781.

56.     On or about October 1, 2018, R. Pierre withdrew $10,000 from Global Protection Foundation's TD Bank account ending in 6781.

57.     On or about October 3, 2018, at the direction of Willman, Victim #7 sent three more cashier's checks totaling $35,000 to an individual whose identity is known to the Grand Jury and is referred to herein as "Associate #3" at FASASI's Hubinger Street address. One check was written to Associate #3 for $7,000; one check was written to an individual whose identity is known to the Grand Jury and is referred to herein as "Associate #4" for $8,000; and one check was written to Global Protection Foundation for $20,000. Willman instructed Victim #7 to package all the checks in a book and put the book in an envelope.

58.     On or about October 5, 2018, the $20,000 check was deposited in Global Protection Foundation's TD Bank account ending in 6781.

59.     On or about October 11, 2018, R. Pierre withdrew $18,000 from Global Protection Foundation's TD Bank account ending in 6781.

60.     The $8,000 check and $7,000 check were each rejected by banks for deposit. Willman told Victim #7 that she would need to send $15,000 in cash if she wanted her winnings. In order to send $15,000 in cash, Victim #7 informed Willman that she needed the money from these two rejected checks refunded to her bank account. However, Victim #7's bank needed proof that the checks were not deposited before it would refund her account.

61.     On or about October 15, 2018, FASASI mailed the $7,000 check back to Victim #7.

### Victim #8

62.     "Victim #8," whose identity is known to the Grand Jury, was a 73-year-old resident of Connecticut.

63.     Victim #8 was a victim of a romance scam. Beginning in or around August 2015, Victim #8 established a relationship with someone claiming to be "Willard Hinkle,"

who she met on seniorpeoplemeet.com, an online dating website. Victim #8 never met Hinkle in person and only communicated with him via text messages, email and telephone.

64.     From in or around August 2015 through in or around November 2018, Victim #8 believed she was sending Hinkle money through various third parties to help Hinkle with financial, personal and business problems.

65.     For example, on or about June 11, 2018, based on information provided to Victim #8 by Hinkle, Victim #8 believed she was meeting someone named Alexus Thomas ("Alexus") at a train station in Connecticut in order to give Alexus $10,000 for Hinkle. Victim #8 received a text message that day from FASASI's cell phone number letting her know what time Alexus would be at the train station.

66.     On or about August 21, 2018, in advance of another meeting between Victim #8 and Alexus, Hinkle gave Victim #8 FASASI's cell phone number, telling Victim #8 that it was Alexus's cell phone number.

67.     On or about September 19, 2018, at Hinkle's direction, Victim #8 sent Alexus Thomas at the Sherman Avenue address a $19,500 cashier's check written out to R. Pierre. On or about September 20, 2018, this check was deposited into Global Protection Foundation's Wells Fargo account ending in 3999.

68.     On or about September 25, 2018, FASASI's cell phone number was in contact with the phone number Hinkle had been using to communicate with Victim #8.

<u>Victim #9</u>

69.     "Victim #9," whose identity is known to the Grand Jury, was a 66-year-old resident of South Carolina.

70.     Victim #9 was a victim of a romance scam. Beginning in or around July 2018, Victim #9 established a relationship with someone claiming to be "Kevin Onchcuk," who she met through an online dating website. Victim #9 never met Onchuck in person.

71.     Through various fraudulent statements, Onchcuk and his associates induced Victim #9 to send to third parties more than $400,000.

72.     On or about October 23, 2018, Victim #9 sent a package containing $27,000 in cash to THOMAS at the Sherman Avenue address. The package was damaged during transit and the United States Postal Service, seeing that there was cash in the package, refused to deliver it. On or about October 25, 2018, THOMAS went to the post office to retrieve the package but was denied. On or about October 26, 2018, a postal worker called THOMAS and advised him that the package would be returned to sender. THOMAS was told that there was no need to come to the post office. Later that day, THOMAS came to the post office again to try to retrieve the package. THOMAS falsely claimed that the package was from his aunt and that she had told him to come back to the post office to get the package.

<u>Victim #10</u>

73.     "Victim #10," whose identity is known to the Grand Jury, was a 73-year-old resident of Georgia

74.     Victim #10 was a victim of a lottery scheme. In or around February 2019, conspirators fraudulently told Victim #10 that she won $150,000 through the American Recovery and Reinvestment Act.

75.     At the conspirators' direction, in order to collect her winnings, on or about February 12, 2019, Victim #10 sent $1,350 cash in the mail using the United States Postal Service to someone with initials "D.W." at Dobbs's North State Street address in Ansonia, Connecticut.

14

76.     On or about February 13, 2019, the letter carrier attempted to deliver a package to the North State Street address to D.W., but was told by an individual at the resident that D.W. did not live there anymore.

77.     On or about February 13, 2019, Victim #10 asked the postal service to redirect her package to a Fitch Street address in New Haven. The postal service was unable to redirect her package so it was returned to Victim #10.

78.     On or about February 13, 2019, Dobbs, impersonating D.W., came to the post office to claim a package.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO AND THREE
### (Mail Fraud)
### (FASASI, THOMAS)

79.     Paragraphs 1 through 78 are incorporated by reference.

80.     From in or about February 2017 and continuing through the date of this Indictment, in the District of Connecticut and elsewhere, FASASI and THOMAS, the defendants herein, knowingly and with the specific intent to defraud devised and intended to devise a scheme and artifice to defraud others and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, that is, by inducing people to send money to FASASI, THOMAS, and their associates through lottery and romance scams, as described above.

81.     On or about the dates listed below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, the defendant listed below knowingly caused to be delivered by mail and private and commercial interstate carrier, the following matters, each of which is a separate count of this Indictment:

15

7,000 HLC

| Count | Defendant | Date | Means of Delivery | Matter |
|-------|-----------|------|-------------------|--------|
| 2 | FASASI | October 17, 2018 | United Parcel Service (a commercial interstate carrier) | A cashier's check for $8,000 with remitter Victim #7, sent from Connecticut to Victim #7 in Colorado |
| 3 | THOMAS | October 23, 2018 | United States Postal Service | A package containing $27,000 cash from Victim #9 in South Carolina to Connecticut |

All in violation of Title 18, United States Code, Section 1341.

## COUNT FOUR
### (Conspiracy to Commit Money Laundering)

82.     Paragraphs 1 through 81 are incorporated by reference.

83.     From in or around August 2015, and continuing through the date of this Indictment, in the District of Connecticut and elsewhere, defendants FASASI, THOMAS, DOBBS, S. PIERRE, and R. PIERRE did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit money laundering under Title 18, United States Code, Section 1957, namely, to knowingly engage and attempt to engage in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000, that is, the deposit, withdrawal, transfer and exchange of United States currency, funds and monetary instruments, such property having been derived from specified unlawful activity, that is, mail and wire fraud and conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349, as described in this Indictment.

All in violation of Title 18, United States Code, Section 1956(h).

COUNT FIVE THROUGH ELEVEN
(Money Laundering)

84.     Paragraphs 1 through 83 are incorporated by reference.

85.     On or about the dates set forth below, in the District of Connecticut and elsewhere, the defendant identified below did knowingly engage and attempt to engage in monetary transactions, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000, that is the transactions indicated below, such property having been derived from specified unlawful activity, that is mail and wire fraud and conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1349, as described in this Indictment, each transaction constituting a separate count:

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|---|---|---|---|
| 5 | FASASI | March 17, 2017 | Cash withdrawal of $15,083.75 from FASASI's TD Bank account ending in 5682. |
| 6 | FASASI | May 19, 2017 | Cash withdrawal of $17,000 from FASASI's TD Bank account ending in 5682 |
| 7 | DOBBS | September 12, 2017 | Deposit of $13,000 check into DOBBS's TD Bank account ending in 7467 |
| 8 | DOBBS | September 25, 2017 | Deposit of $15,000 check into DOBBS's TD Bank account ending in 7467 |
| 9 | FASASI | October 2, 2017 | Cash withdrawal of $15,000 from FASASI's TD Bank account ending in 5682 |

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|:-----:|-----------|------|----------------------|
| 10 | R. PIERRE | October 11, 2018 | Cash withdrawal of $18,000 from Global Protection Foundation's TD Bank account ending in 6781 |
| 11 | S. PIERRE | December 3, 2018 | Cash withdrawal of $11,500 from S. PIERRE's Chase Bank account ending in 7957 |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)
(Money Laundering)

86.     Upon conviction of one or more of the money laundering offenses alleged in

Counts Four through Eleven of this Indictment, defendants FASASI, THOMAS, S. PIERRE,

R. PIERRE, and DOBBS shall forfeit to the United States of America pursuant to Title 18,

United States Code, Section 982(a)(1), all right, title, and interest in any and all money and

other property involved in each offense in violation of Title 18, United States Code,

Section 1957, and all property traceable to such property, and a sum of money equal to the

total amount of money involved in each offense, or conspiracy to commit such offense, for

which the defendant is convicted.

87.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendant(s), cannot be located upon the exercise of due diligence, has been

transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction

of the court, has been substantially diminished in value, or has been commingled with other

property which cannot be divided without difficulty, it is the intent of the United States,

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United

States Code, Section 982(b), to seek forfeiture of any other property of said defendant(s) up

to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 982(a)(1), Title 21,

United States Code, Section 853, and Rule 32.2(a), Federal Rules of Criminal Procedure.

## FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461(c) & 18 U.S.C. § 981(a)
(Mail Fraud and Conspiracy to Commit Mail and Wire Fraud)
(FASASI, THOMAS)

88.     Upon conviction of one or more of the mail and wire fraud and conspiracy to

commit mail and wire fraud offenses alleged in Counts One through Three of this Indictment,

defendants FASASI and THOMAS shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341 and 1349, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

89.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s), cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), Title 21, United States Code, Section 853, and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON

THE UNITED STATES OF AMERICA

LEONARD C. BOYLE
FIRST ASSISTANT UNITED STATES ATTORNEY

HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY